## POLK–GENUNG–POLK CO. v. McGHEE.
(No. 8737.)

(Court of Civil Appeals of Texas. Dallas. Jan. 13, 1923. Rehearing Denied Feb. 10, 1923.)

**1. Evidence ⬤➾441(11)—Evidence of payee's agreement to procure mortgage securing notes sued on inadmissible in action against indorser.**

Evidence of a parol agreement between the payee and indorser ·of notes sued on that the former had or would obtain and record a chattel mortgage securing them *held* inadmissible as varying and adding to a written agreement.

**2. Bills and notes ⬤➾518(2)—Evidence held not to show payee's agreement to secure mortgage to protect indorser.**

In an action on notes indorsed by defendant, evidence *held* to show, not that a chattel mortgage was to be executed and recorded to protect the indorser, but that the notes ·were executed and old ones canceled at defendant's instance in consideration of an extension of time to afford the maker an opportunity to pay the debt.

**3. Bills and notes ⬤➾444—Creditor need not resort to collateral security before recovery against surety, in absence of express contract.**

A creditor need not resort to collateral security or any particular security precedent to recovery on a note against the indorser unless he has expressly contracted to that effect.

**4. Bills and notes ⬤➾519—Evidence in action against indorser held to show that vendor's lien on maker's property had ceased to be available for security.**

In an action on notes indorsed by defendant, evidence *held* to show that a vendor's lien on property for which the notes were given by the maker, who became bankrupt after the suit was filed, and later died leaving no estate, had without plaintiff's fault ceased to be available for security; the property not being listed in the bankruptcy schedules or accounted for in the record.

Appeal from Dallas County Court; T. A. Work, Judge.

Action by the Polk-Genung-Polk Company against George S. McGhee. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Burgess, Burgess, Sadler, Christman & Brundidge, of Dallas, for appellant.

Davis, Johnson & Handley, of Dallas, for appellee.

HAMILTON, J. Appellant sued appellee for the recovery of judgment upon a series of seven promissory notes which were signed by Geo. P. Turner and indorsed by appellee.

The defense pleaded by appellee was in substance that appellant, in the year 1916, sold and delivered to Geo. P. Turner certain silos and similar wares, for a portion of the purchase price of which appellant demanded and received from Turner certain notes; that these notes were renewed by the execution of the note sued upon; that at the time each set of notes was executed Turner furnished appellant other ₅security for them; that at the time appellee indorsed both the original notes and the renewal notes it was understood that appellant either had or would obtain a mortgage on the wares in part payment for which the notes had been executed, and that appellant either had filed, or would file, such mortgage for record in the county where the property was located. It was alleged that these representations and promises induced appellee to sign all of the original and renewal notes.

It was further alleged that, subsequent to the above-described understanding, Turner became a bankrupt, and his estate was administered for the benefit of his creditors in

bankruptcy, and that in the course of the administration of the estate in bankruptcy appellee discovered that no mortgage had been taken by appellant covering the property sold to Turner, and that none had been filed for record. It was alleged that the security had become worthless, and the property which should have been covered by a mortgage duly recorded had become a part of the estate in bankruptcy by reason of the failure to record the mortgage, and that through such circumstances the security which would have existed by virtue of the recorded mortgage had been lost to appellee, and thus his rights had been violated without his knowledge or consent.

The issue having been joined by this answer to appellant's petition declaring upon the notes, the evidence was adduced, and the case submitted to a jury upon special issues, and, in accordance with the findings of the jury, judgment was rendered for appellee.

The issues submitted to the jury and the respective answers thereto were as follows:

"When George S. McGhee indorsed the original notes given by Turner in 1916; did he do so with the understanding with agent for plaintiff that a mortgage would be taken on forms sold to Turner, and that said mortgage would be filed for registration in McLennan county, Tex.? Answer: Yes.

"When George S. McGhee indorsed the renewal notes given in 1917, did he do so with the understanding that mortgage had been taken on forms sold to Turner and that said mortgage had been filed for registration in McLennan county, Tex.? Answer: Yes."

The first of the notes sued upon matured October 1, 1917. The others matured at intervals of three months. Each of them was for the sum of $100, except the last, which was for $97.50. The note first maturing was as follows:

"$100.00.                     July 1, 1917.

"October 1, 1917, after date, I promise to pay to the order of Polk-Genung-Polk Co. one hundred and no/100 dollars, with interest at six per cent. per annum, from maturity and until paid, and with attorney fees. Negotiable and payable at Ft. Branch, Ind., without any relief from valuation or appraisement laws, for value received. The drawers and indorsers severally waive presentment, demand for payment, protest, and notice of protest and nonpayment of this note.

"This note is given as the evidence of the consideration of the following described personal property, to wit: Part payment on one 16-foot and one 14-foot Polk System machine with chutes No. 1041 and No. 1042, this day conditionally sold by Polk-Genung-Polk Co. to maker of this note. It is expressly agreed by the maker of this note that the title to the above-described property shall be and remain in the above-mentioned sellers thereof, and that the title to said property shall not pass to, or vest in, said maker of said notes, until the said note and all accumulated interest shall have been fully paid. It is further expressly agreed by the makers of this note that the title to said

property above described shall be transferred by indorsement of this note to any person or corporation to whom this note may be assigned.                [Signed]  Geo. P. Turner."

The contractual terms of all the notes were identical.

Appellee testified that appellant sold Geo. P. Turner certain silo forms for which the original notes indorsed by him were executed, and that an authorized agent of appellant, through whom the sale was made and the transaction wholly executed, was in Waco in 1916 at the time of the sale and execution of the notes; that both this agent and Turner then agreed with appellee that a lien would be retained by appellant on the silo forms and that appellant would record the lien to protect the indorsement. He testified that about July 1, 1917, when he indorsed the renewal notes, the renewal notes were in the form of the original ones reciting that appellant retained a lien on the silo forms, and, as appellee understood it, this transaction was simply an extension and carrying out of the original agreement made in 1916 with appellant's agent. He further testified that he made no effort to procure or save the silo forms either at the time or after Turner went into bankruptcy, but notified the attorneys of appellant that he would expect them to do this, as appellant held a mortgage on the property.

The execution of the notes sued upon followed a period of correspondence between appellant and appellee extending from early in January, 1917, to early in July, 1917, after the first series of notes had become due and Turner had failed to pay them.

Throughout this correspondence appellant was insisting upon payment by appellee, and appellee, at no time denying full and complete liability, but acknowledging his liability, was imploringly soliciting appellant to grant more time in order that Turner might be able to settle the indebtedness by making small payments from time to time. Appellee throughout the correspondence assured appellant that he was unable on account of business reverses to make payment, and that, if indulgence were accorded Turner, the latter would be able to discharge the liability completely, and would discharge it. Appellee gave assurance that he would exert influence upon Turner to have him make small payments designated by appellee, provided this arrangement should be acceded to by appellant, and he assured appellant that Turner was engaged in activities from which he was obtaining revenue sufficient to meet payments in the amounts and on the respective dates indicated in the notes sued upon. These terms, finally having been acceded to by appellant in compliance with appellee's solicitations and insistence, were precisely reflected in the notes involved in this suit.

During the course of this correspondence before the notes sued upon were executed

appellant inquired of appellee as to the location of the property upon which the lien retained in the face of the notes existed. It received no reply from appellee to this inquiry. The inquiry subsequently was repeated to appellee, and in response the latter advised appellant that he was informed by Turner that Turner had the property stored with one of his friends in the country near Waco. In none of this correspondence preceding the execution of the second series of notes did appellee in any way intimate that he was relying upon any mortgage other than that expressed in the terms of the conditional sale contained in the notes, but, as above stated, recognized his unqualified liability as a surety. Only after the new notes had been executed, and after default had been made by both Turner and appellee, and steps had been taken to enforce collection against appellee, did he assert the existence of an agreement that a chattel mortgage was to have been taken and filed for record when the first series of notes was executed.

The transaction which resulted in the execution and delivery of the second series of notes, the record conclusively indicates, was entirely between appellant and appellee. After the agreement had been reached Turner merely acquiesced in it at the instance of appellee. The correspondence between the parties to this suit conclusively reflects that it alone expressed the dealings which resulted in the delivery of the second series of notes and the cancellation of the original notes, and there is no intimation to the effect that any part of the negotiations extended beyond what is expressed in the letters which the record contains as having passed between appellant and appellee.

[1, 2] These letters not only contain no intimation that a mortgage was to be executed and recorded to protect appellee, but they conclusively exclude that idea. The note itself is void of any expression to indicate any such agreement. There is no allegation of fraud, omission, or mutual mistake, and even if a parol agreement had existed, as appellee contends, we think proof of it could not have been received, because the effect of such evidence would have been to vary and add to a written agreement, and this very objection was fully urged by appellant. Besides, the effect of the uncontradicted evidence is to make the execution of the notes sued upon the primary undertaking of appellee. It was at his instance that these notes were executed and the old ones canceled. The consideration for the execution of the new notes was the extension of time affording Turner an opportunity to make payment and saving appellee the embarrassment, humiliation, and loss he estimated and stated would result to him from a suit upon the original notes. He was involved and embarrassed financially on account of business reverses. He had other creditors. He feared that the institution of suit would precipitate his other creditors into an attitude of disaffection which he could not overcome. Hence he represented that the proposed arrangement would not only afford an opportunity for Turner to pay the debt without the liability ultimately falling upon appellee, but would obviate difficulties with other creditors and possible disaster to his plans of business recovery; and he expressly stated in the course of the correspondence with appellant that, if Turner failed to pay the debt under his urgings, he himself would endeavor to make settlement.

[3] Even, however, if appellee should be regarded strictly as a surety, his contention that he became released from liability because appellant did not recover or foreclose upon the property, upon which a lien was retained in the notes, would be unsound. A creditor is not required to resort to collateral security, or any particular security, precedent to recovery against a surety, unless he has expressly contracted to that effect. It is only when the terms of the contract indicate such to be the agreement that the surety will be held not to be liable until the security has been exhausted. The terms of the notes themselves disclosing nothing to indicate such an understanding, and, the letters through which the negotiations were had which resulted in the execution of the notes clearly negativing that any such intention ever existed with reference to this particular transaction, the defense is not available to appellee.

[4] Turner became a bankrupt after the suit was filed, and later he died. He seems to have had no estate either at the time of bankruptcy or at his death. These facts were alleged by appellant. The schedules of personal property in bankruptcy did not list the property for which the notes were given. The property is unaccounted for in the record of this case. The record as a whole indicates that the security, without any fault whatever of appellant's had ceased to be available for security, as alleged by appellant.

The findings of the jury are unsupported by legal evidence. Liability was conclusively established against appellee, and the peremptory instruction to find for appellant ought to have been given.

The judgment is reversed, and judgment is rendered for appellant for the full amount the terms of the notes stipulate.

Reversed and rendered.